UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

PHILIP M.,

                                  Plaintiff,

v.                                                              CASE NO. 1:25-cv-00094
                                                                (JGW)
COMMISSIONER OF SOCIAL SECURITY,

                                  Defendant.

_____

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented in accordance with a standing order to proceed before the undersigned. The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the Court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docs. 5, 8.) Upon review of the administrative record and consideration of the parties' filings, Plaintiff's Motion for Judgment on Pleadings (Doc. 5) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Doc. 8) is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

## I.      RELEVANT BACKGROUND

### A.      Procedural Background

On April 22, 2022, Plaintiff protectively filed an application for a period of disability and disability insurance benefits, alleging disability beginning December 25, 2019.  (Tr. 67, 214-15.)  Plaintiff's claim was denied initially and upon reconsideration.  (Tr. 65, 85.)

He then timely requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 142-43.)  Plaintiff appeared with counsel for a telephonic hearing before ALJ Anna Wright held on November 7, 2023.  (Tr. 33-64.)  On March 28, 2024, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled.  (Tr. 14-32.)  The Appeals Council denied his request for review, (Tr. 1-6), and Plaintiff timely filed his appeal to this Court.

### B.      Factual Background[1]

Plaintiff was born February 19, 1989 and advanced through college, obtaining a two-year degree and then a Bachelor of Arts in geology.  (Tr. 39, 66.)  He initially alleged his disabling conditions to include back injury, anxiety, and depression.  (Tr. 67.)  At the hearing before ALJ Wright, Plaintiff alleged his severe impairments to include back issues from prior surgeries and generalized anxiety disorder, panic disorder, and major depressive disorder.  (Tr. 37.)

Plaintiff testified as to his current treatment regimen for his back pain.  He indicated that he does not attend physical therapy but does still perform exercises and stretches at home. (Tr. 42.)   He also explained that, if his pain is severe, he may do stretches throughout the day and use an ice pack at bedtime. (*Id.*)  Plaintiff also described that he previously treated with a pain management specialist, but he stopped going because he felt that the treatment had reached its limit and the only options were therapy and medication.  (Tr. 43.)  Plaintiff indicated that he still possessed some pain medications that he took as needed, but he explained he was not dependent on them.  (*Id.*)  He generally described using heat, ice, over the counter medication, and a TENS unit to help him manage his conditions.  (Tr. 49.)

---

[1] This recitation of facts primarily includes testimony from the hearing before the ALJ.  Other facts will be developed throughout the opinion as relevant to the Court's analysis.

To manage his mental health, Plaintiff indicated that he treats with a psychiatrist every other month and also sees a doctor for medication management every four to six months. (Tr. 43.)  Back in 2019, he treated with a different doctor to manage his mental health issues, and he saw him every four to six weeks. (Tr. 45.)  Plaintiff described that he has anxiety and panic about going back to work, and noted that, any time he would get the confidence to try to get back to work, anxiety would prevent him from following through. (Tr. 46.)  He further elaborated on his concerns to include general anxiety related to starting something new and unknown, as well as concern about whether he can physically perform any jobs due to his back pain. (Tr. 47.)

Plaintiff also testified as to his physical abilities.  Plaintiff explained that he avoids heavy lifting and physically strenuous activities, as well as standing or sitting too long, as either will cause his back to tighten up. (Tr. 48.)  Plaintiff estimated that he could stand for approximately forty-five minutes and sit for an hour or two before needing to change positions or get up and walk around. (*Id.*)

Plaintiff described that he performs some chores around the house, including sweeping and vacuuming small messes, taking care of his cat, and carrying in groceries for his parents. (Tr. 49-50.)  He indicated he could use a small snow blower to clear snow, and he mows the yard using a push mower. (Tr. 50.)

With regard to his mental limitations, Plaintiff explained that he gets anxiety about going shopping, so he does not usually go grocery shopping, but he will go to the corner store to grab something. (*Id.*)  He also noted that he tends to "skip out on" larger events with friends, but is able to attend smaller group settings, such as watching football on Sundays with a few friends. (Tr. 51.)  He explained that he may occasionally attend larger

3

celebrations, for example birthday parties, but it increases his anxiety. (*Id.*) He described, as it pertained to working, anxiety arising from considering whether a coworker might get upset or mad at him. (Tr. 53.) He also worried about a coworker observing him having a panic attack. (*Id.*) He indicated he even experiences anxiety at home, which can prevent him from getting out of bed some days. (Tr. 53-54.) He classified such days as "bad days" but noted he had mostly good days. (Tr. 54.)

## C. ALJ's Decision

Generally, in her decision, the ALJ made the following findings of fact and conclusions of law.

1. The claimant last met the insured status requirements of the Social Security Act on September 30, 2020. (Tr. 19.)

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of December 25, 2019, through his date last insured of September 30, 2020. *See* 20 C.F.R. § 404.1571 *et seq*. (Tr. 19.)

3. Through the date last insured, the claimant had the following severe impairments: a history of two back injuries and a fusion surgery from L3 to L5; generalized anxiety disorder; and major depressive disorder. *See* 20 C.F.R. § 404.1520(c). (Tr. 19.)

4. During the period at issue, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526). (Tr. 20.)

5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except he can occasionally interact with supervisors, coworkers, and the general public; and the claimant can understand and carry out simple instructions and make simple work-related decisions. (Tr. 22.)

6. Through the date last insured, the claimant was unable to perform any past relevant work. *See* 20 C.F.R. § 404.1565. (Tr. 26.)

4

7.  The claimant was born on February 19, 1989, and was 31 years old, which is defined as a younger individual age 18-49, on the date last insured. *See* 20 C.F.R. § 404.1563. (Tr. 26.)

8.  The claimant has at least a high school education. *See* 20 C.F.R. § 404.1564. (Tr. 26.)

9.  Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled. *See* 20 C.F.R. § 404.1568. (Tr. 26.)

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed. *See* 20 C.F.R. § 404.1569 and 404.1569a. (Tr. 26.)

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from December 25, 2019, the alleged onset date, through September 30, 2020, the date last insured. *See* 20 C.F.R. § 404.1520(g). (Tr. 27.)

## II.    LEGAL STANDARD

### A.    Standard of Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d

Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

### B.    Standard to Determine Disability

To be disabled under the Social Security Act (Act), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a).

At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient residual functional capacity (RFC) for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers

in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

## III.    ANALYSIS

Plaintiff argues, in essence, that the ALJ's RFC is not supported by substantial evidence because there is no medical opinion to support it.  Although there are agency reviewer opinions in the record, each concluded that there was insufficient evidence to make a disability determination prior to the date last insured.  (*See* Tr. 70, 72, 81, 82.) Thus, Plaintiff contends that the ALJ: (1) failed to discharge her duty to develop the record, as she did not obtain a "retrospective medical opinion;" (2) formulated her RFC out of "whole cloth," relying improperly on her own lay judgment; and (3) ultimately failed to properly explain how she concluded Plaintiff could perform the RFC. (*See* Doc. 5-1 at 9, 12, 16.)

As a threshold matter, the regulations explicitly provide that the RFC is an administrative finding reserved to the Commissioner—not a medical finding.  20 C.F.R. § 404.1527(d); *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) (recognizing that "the ALJ bears 'the final responsibility' for making RFC determinations"); *see also Desirae D. v. Comm'r of Soc. Sec.*, 20-cv-00054-JGW, 2021 WL 2042576, *3 (W.D.N.Y. May 21, 2021). As such, the RFC conclusion "need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence."  *Schillo*, 31 F.4th at 78.  Indeed, an ALJ is permitted to "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *see also Demeca P. v. Comm'r of Soc. Sec.*, No. 1:22-cv-0504, 2024 WL 4505265, at *4 (W.D.N.Y. Oct. 16, 2024) (recognizing that "an ALJ may formulate an RFC absent

any medical opinions" and "is free to reject portions of medical-opinion evidence not supported by objective evidence.")

"The Second Circuit has consistently held where 'the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required.'" *Tracy N. v. Comm'r of Soc. Sec.*, No. 1:20-cv-0841(WBC), 2021 WL 2649577, at *3 (W.D.N.Y. June 28, 2021) (quoting *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017)). That said, courts in this district have generally acknowledged that, to establish an RFC without medical opinion evidence, the record "must show limitations that have measured, qualified, or described themselves in a way that permits reasonable inferences of the claimant's RFC." *Lee C. v. Comm'r of Soc. Sec.*, 23-cv-0171-LJV, 2024 WL 217582, *3 (W.D.N.Y. Jan. 19, 2024); *see also Johnson v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 286, 293-94 (W.D.N.Y. 2018) (recognizing that the record must provide some interpretation that correlates medical data into functional limitations). Courts also recognize that certain impairments may be "relatively simple and mild, such that an ALJ may render a 'common sense judgment' without a physician's assessment." *Kenneth P. v. Comm'r of Soc. Sec*, 1:19-cv-01478, 2021 WL 1135469, at *4 (W.D.N.Y. Mar. 25, 2021) (internal quotation marks and citation omitted); *see also Janine T. v. Comm'r of Soc. Sec*, No. 23-cv-384-FPG, 2024 WL 1678128, *3 (W.D.N.Y. April 18, 2024) (recognizing that "[w]hile an ALJ may render common sense judgments about functional capacity, [she] must avoid the temptation to play doctor.") (internal quotation omitted).

In her decision, ALJ Wright carefully detailed Plaintiff's medical history pertaining to his physical issues, including treatment, subjective complaints, objective examinations,

8

and diagnostic evidence. (*See* Tr. 23-24.)  She noted that Plaintiff complained of low back pain but similarly noted that records reflected reports that the pain was under control following the surgeries several years before and that he was without neurological symptoms. (Tr. 23; *see also, e.g.,* Tr. 304-09, 361-93, 405-34.)   Further, the ALJ acknowledged that the objective examinations showed a normal gait and were also otherwise normal except for lumbar tenderness and decreased motion in his lumbar spine. (Tr. 23; *see also, e.g.,* Tr. 361-93).  Similarly, while the diagnostic imaging reflected evidence of the prior surgeries, the MRI of the lumbar spine was unremarkable but for reflecting the prior surgeries. (Tr. 23; *see also* Tr. 299-300, 301-02, 326-27.)

The ALJ also thoroughly considered Plaintiff's mental health treatment history. She correctly noted his history of treatment for anxiety and panic disorder. (Tr. 23.)  She also acknowledged that prior to the alleged disability onset date, his symptoms included little interest or pleasure in doing things, and even after the beginning of the relevant period, although Plaintiff reported some increased anxiety, his mental examinations reflected positive improvements, including less anxious mood and affect, improving attention and concentration, intact memory skills, and good insight and judgment. (Tr. 23; *see also, e.g.,* Tr. 306, 308, 409, 417, 419, 421.)   The ALJ recognized Plaintiff's reports of "excessive worrying, low motivation, feeling self-conscious, fatigue, and limited social activity" as well as complaints of fatigue attributed to his medications, noting that fatigue appeared to be the only side effect from his medications.  (Tr. 23, 24; *see also, e.g.,* Tr. 304-09, 405-11, 435-36, 726-35.)   The ALJ also acknowledged that Plaintiff's records included a period where Plaintiff denied any psychiatric symptoms at all.  (Tr. 24; *see also, e.g.,* Tr. 361-62, 372-73, 378, 389.)   She also noted Plaintiff's reports of rarely

9

leaving his home, except to run small errands (although his physician had advised him to avoid crows due to the COVID-19 pandemic), and his lack of ability to start and sustain employment and continued isolation from others, which increased his depression and lack of self-worth.  (Tr. 24.)

The ALJ further recognized that Plaintiff's use of medication was primarily "as needed," and that during the period at issue, he needed medical care for his back issues only every three months, and was not treating with any type of specialist.  (*See* Tr. 24; *see also, e.g.*, Tr. 229-32, 258-59, 311-95.)  He ceased pain management and therapy because he felt they offered no further value. (*See* Tr. 24, 42-43.)  Rather, he managed his pain using stretches, ice, and a TENS unit. (*See* Tr. 24, 42-49.)

The ALJ also considered Plaintiff's daily activities. (*See* Tr. 22-23.) She noted Plaintiff's attempts to stay busy around the house by doing tasks including "sweeping and vacuuming small amounts, taking care of his cat, and carrying in groceries for his parents." (Tr. 22.) She also recognized that Plaintiff could use a small snow blower in the winter to clear the driveway and could also mow the lawn with a push mower. (Tr. 23.) The ALJ also acknowledged that Plaintiff admitted being able to "pay bills, count change, handle a savings account, and use a check book or money orders."  (Tr. 21.)

Having carefully reviewed the record and the ALJ's decision, the Court finds no error.  Rather, it is clear that the ALJ formulated Plaintiff's RFC based on the record as a whole, and it is supported by substantial evidence.  Significantly, this matter involves a limited period: beginning December 25, 2019 and ending on September 30, 2020, the date last insured, and that Plaintiff did not file his claim until April 22, 2022, well after the date last insured.  Thus, under such circumstances, the ALJ was limited to the medical

10

records available to determine Plaintiff's disability, as a contemporaneous examination or evaluation would not inform the ALJ about Plaintiff's abilities two years prior, which is the relevant period for the disability determination.

Indeed, the ALJ's RFC is consistent with the medical records and testimony in evidence. Plaintiff's testimony suggests some limitations in walking, standing, and sitting, but these limitations are not inconsistent with light exertional work, especially when regular breaks and a lunch period are considered.  *See* 20 C.F.R. § 404.1567(b).[2] Further, Plaintiff's generally normal gait and other objective medical findings similarly support a light RFC.  *See Wright v. Berryhill*, 687 F. App'x 45, 48 (2d Cir. 2017) (affirming the ALJ's RFC of light work with additional restrictions when the record reflected a normal gait and station, normal strength in the extremities, among other findings); *Burnette v. Colvin*, 564 F. App'x 605, 608 (2d Cir. 2014) (finding the RFC for light work to be supported by substantial evidence when the record reflected "normal range of motion, gait, and strength" and occasional "mild or moderate physical pain, which her medication generally relieved," among other facts).

Additionally, as the ALJ implicitly recognized, Plaintiff was able to manage his conditions with relatively conservative treatments, further consistent with the ALJ's conclusion that he was not disabled.  *See Snyder v. Saul*, 840 F. App'x 641, 643 (2d Cir. 2021) (examining record evidence supporting the ALJ's RFC for light work when the plaintiff "had moderate limitations but controlled his pain with medication and injections" and "engaged in activities of daily life").  Similarly, his daily activities support the RFC of

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  *See* 20 C.F.R. § 404.1567(b).

light work.  *See id.*  *See also Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (approving of the ALJ's reliance on daily activities, including "was able to care for his one-year-old child, including changing diapers, that he sometimes vacuumed and washed dishes, that he occasionally drove, and that he watched television, read, and used the computer" in affirming the ALJ's RFC of light work).

Moreover, the evidence supported the ALJ's mental restrictions as well.  Plaintiff's testimony and treatment history suggested some limitations in interacting with others, but not the complete inability to do so, and his mental examinations were largely normal.  And the ALJ limited Plaintiff to simple instructions and making simple decisions.  Given Plaintiff's admitted abilities regarding chores, managing money, and educational level, such restrictions are consistent with the record.  *See Will v. Comm'r of Soc. Sec.*, No. 1:15-CV-00635(MAT), 2018 WL 1026229, at *3 (W.D.N.Y. Feb. 23, 2018) (finding the ALJ's limitation to simple tasks supported by substantial evidence when "the Plaintiff's symptoms of elevated (or anxious) mood and 'negligible degree of conceptual disorganization' do not . . . prevent her from performing simple tasks, especially given that the remainder of her mental status examinations were essentially normal.")

Plaintiff does not argue for a more restrictive RFC or identify any supported limitations that were rejected by the ALJ.  This is significant, as Plaintiff maintains the burden of proving a more restrictive RFC than that assigned by the ALJ. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018). Plaintiff does not attempt to carry this burden.

The Court also does not find that the ALJ failed to develop the record.  While the Court acknowledges that "the social security ALJ, unlike a judge in a trial, must on behalf

of all claimants ... affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding," *Moran*, 569 F.3d at 112 (internal quotation marks omitted), this requires the ALJ to develop a claimant's complete medical history. *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (citing 20 C.F.R. §§ 404.1512(d)–(f)). Plaintiff does not argue that medical records were missing, or that there was a substantive gap in the record.  To the contrary, he argues that a medical opinion was not included. However, given the fact that the claim was not filed until well after the relevant period, a consultative examination would not have been possible, nor is one required.  *See Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 32 (2d Cir. 2013) (noting that "an ALJ is not required to order a consultative examination if the facts do not warrant or suggest the need for it.").  In sum, the Court finds no gap existed in the record.  *See Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) ("[An] ALJ is not required to develop the record any further when the evidence already presented is adequate for the ALJ to make a determination as to disability.")

Moreover, the Court does not find that the ALJ created the RFC out of whole cloth. The law is quite settled that a medical opinion is not required to formulate an RFC, as it is an administrative finding, not a medical finding. *See Schillo*, 31 F.4th at 78.  And here, the record contained sufficient information for the ALJ to formulate an RFC supported by substantial evidence, as set forth above.  *See Tracy N.*, 2021 WL 2649577, at \*4 (affirming the ALJ's RFC, even though there was no medical opinion evidence in the record, concluding that the ALJ formulated the plaintiff's RFC "based on the record as a whole," "even though the record failed to contain specific functional limitations," when the ALJ relied on objective medical observations).

To the extent Plaintiff argues that a function-by-function analysis was required, and remand is necessary without it, the Court disagrees.  The Second Circuit has noted that "[w]here an ALJ's analysis ... regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous, ... remand is not necessary merely because an explicit function-by-function analysis was not performed."  *Domm v. Colvin*, 579 F. App'x 27, 28–29 (2d Cir. 2014) (quoting *Cichocki v. Astrue,* 729 F.3d 172, 177 (2d Cir. 2013)) (internal quotation marks omitted).

Thus, the Court has carefully considered the record and the ALJ's analysis in formulating the RFC, and it finds no error.

## IV.    CONCLUSION

Based on the foregoing, the Court finds no basis for remand.  **ACCORDINGLY**, it is:

**ORDERED** that Plaintiff's Motion for Judgment on the Pleadings (Doc. 5) is **DENIED**, and it is further

**ORDERED** that Defendant's Motion for Judgment on the Pleadings (Doc. 8) is **GRANTED**.

The Clerk of Court is **DIRECTED** to close this case.

Dated: May 11, 2026                                    J. Gregory Wehrman
Rochester, New York                                 HON. J. Gregory Wehrman
                                                              United States Magistrate Judge

14